2023 IL App (3d) 220191

Opinion filed June 2, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the Thirteenth Judicial Circuit, La Salle County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-22-0191 Circuit No. 21-CF-395 |
| DARION COLEMAN, | ) ) ) | Honorable Cynthia M. Raccuglia, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ALBRECHT delivered the judgment of the court, with opinion.
Justices McDade and Davenport concurred in the judgment and opinion.

_____

**OPINION**

¶ 1 Defendant, Darion Coleman, appeals his conviction for aggravated vehicular hijacking (720 ILCS 5/18-4 (West 2020)), arguing there was insufficient evidence to prove the aggravating factor that a 15-year-old was a passenger in the stolen vehicle at the time of the offense. The State responds that it has met its burden. We affirm.

¶ 2 I. BACKGROUND

¶ 3 On November 8, 2021, defendant was charged by information with aggravated vehicular hijacking, alleging he knowingly took a motor vehicle by use of force with a passenger under 16

years of age in the vehicle at the time of the commission of the offense. The matter proceeded to a jury trial on March 14, 2022.

¶ 4     At trial, the State presented evidence that defendant was pulled over, arrested, and issued various traffic citations for speeding, reckless driving, and driving on a suspended license the day of the incident. A video recording of the traffic stop depicted defendant wearing a white hooded sweatshirt with a red Nike decal across the chest and red lettering imprinted on the arm. The arresting officer transported defendant to police headquarters for processing. Thereafter, at around 7 p.m., police dropped him off at the Super 8 hotel in Peru, Illinois. Only two buildings separate the hotel and the Clock Tower Shell gas station.

¶ 5     Violet Sobin, a resident of El Paso, Illinois, testified that on November 6, 2021, she traveled to La Salle County to visit her mother and her brother, Dawson. To make the trip, Violet borrowed her boyfriend's mother's blue Nissan Rogue. That evening, Violet picked up Dawson and their mutual friend Aiden Steele in Ladd, Illinois. Together, they drove in the Nissan through Peru's commercial area. After Violet cashed a check at the nearby Walmart, they ventured over to Taco Bell and purchased food before driving to the Clock Tower Shell gas station. Violet drove with Aiden in the front passenger seat and Dawson seated behind Aiden. Violet pulled into pump 6 at the Shell gas station, and Dawson left to pay inside. When Dawson returned to the vehicle, he began asking Violet questions on how to pump the gas. At this time, a man ran to the driver's side of the Nissan, opened the door, and instructed Violet and her passengers to get out of the car, claiming the gas station was going to get "shot up." The man pulled Violet out of the driver's seat. Violet testified Aiden and Dawson were out of the car at the time. The man then sat down and closed the door, but Violet opened the door in an attempt to stop him from stealing the Nissan. A brief scuffle between Violet and the man ensued. As the man drove away, Violet fell, and her foot was run over.

2

¶ 6       The State introduced surveillance footage from the gas station. The footage reveals the hijacker was a man in a white hooded sweatshirt with a red Nike decal across the chest and red lettering imprinted on the arm. After viewing the video, Violet concluded her testimony by identifying defendant as the man who took the vehicle.

¶ 7       Dawson and Aiden's testimony corroborated Violet's. Dawson testified that, after paying for gas and returning to the car, he overheard someone say "get out of the car. They're about to shoot this place." Aiden testified he was 15 years old on November 6, 2021. He also identified defendant as the man who took the vehicle.

¶ 8       When the dust settled, three items remained at the scene of the crime: a carton of cigarettes, a half-eaten Taco Bell taco, and a paper copy of defendant's traffic citations. Peru Police Department officer Hunter Wright testified that during the evening of November 6, 2021, he was dispatched to the Clock Tower Shell gas station. Initially, he tended to Violet until the ambulance arrived. Officer Wright then took photographs near pump 6 that revealed defendant's driving citations conveniently placed next to the half-eaten Taco Bell taco.

¶ 9       After the State rested, defendant moved for a directed verdict, arguing there was a lack of evidence and identification to support his conviction based on the testimony. The court denied the motion and indicated defendant's contentions were premised on questions of fact and credibility and, "when there's issues of credibility, they belong to the jury." The jury found him guilty of the offense of aggravated vehicular hijacking.

¶ 10       On April 1, 2022, defendant filed a motion for a new trial arguing, *inter alia*, that the State failed to prove him guilty beyond a reasonable doubt. The court heard arguments on May 12, 2022, and entered an order denying his motion for a new trial. That same day, the court sentenced

defendant to a mandatory Class X felony sentence of 25 years' imprisonment based on his criminal record and lack of remorse and mitigating factors.

¶ 11    Defendant timely appealed.

¶ 12                                  II. ANALYSIS

¶ 13    Upon a challenge to the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the offense were proven beyond a reasonable doubt. See *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

¶ 14    The core issue in this case is whether Aiden, Violet's 15-year-old passenger, was a passenger at the time defendant committed the vehicular hijacking offense. The fundamental question of when defendant has committed the underlying crime raises issues of fact and statutory interpretation. The goal of a court's statutory interpretation analysis is to "ascertain and give effect to the legislature's intent," and to best accomplish this goal, we look to the "plain and ordinary meaning" of the statutory language. *Dew-Becker v. Wu*, 2020 IL 124472, ¶ 12. "A person commits vehicular hijacking when he or she knowingly takes a motor vehicle from the person or the immediate presence of another by the use of force or by threatening the imminent use of force." 720 ILCS 5/18-3(a) (West 2020). Vehicular hijacking is a Class 1 felony. *Id.* § 18-3(b). To enhance a defendant's vehicular hijacking charge to an aggravated offense, the State must prove the presence of an aggravating factor during the commission of the crime. See *id.* § 18-4(a). Here, defendant was charged with aggravated vehicular hijacking because Aiden, as a 15-year-old passenger, satisfied the aggravating factor that "a person under 16 years of age [was] a passenger in the motor vehicle at

the time of the offense." *Id.* § 18-4(a)(2). Aggravated vehicular hijacking is a Class X felony. *Id.* § 18-4(b).

¶ 15     On appeal, defendant argues that Aiden was out of the vehicle by the time he gained control. He contends that the *actus reus* of vehicular hijacking is taking control of a vehicle. Therefore, the phrase "at the time of the offense" in section 18-4(a)(2) is operative; it precludes his aggravated vehicular hijacking conviction because he had not yet taken control of the car while Aiden was a passenger. See *id.* § 18-4(a)(2). In response, the State claims that the record paints a different picture. It argues that Violet's forceful removal from the vehicle was contemporaneous with Aiden getting out of the vehicle. According to the State, when weighing the evidence in its favor, Aiden remained a passenger until the defendant took the vehicle by force.

¶ 16     Briefly, we note that a defendant may be found guilty of vehicular hijacking "by threatening the imminent use of force." *Id.* § 18-3(a). However, it is unnecessary to determine whether defendant's instruction to "get out of the car"because "[t]hey're about to shoot this place" arose to a threat. The charging instrument makes plain that defendant was charged for knowingly taking the Nissan from Violet "by the use of force" while Aiden remained in the vehicle.

¶ 17     "[T]he act of vehicular hijacking occurs when the offender takes a vehicle from 'another.' " *People v. Jackson*, 2016 IL App (1st) 133823, ¶ 48. Black's Law Dictionary defines "take" as "[t]o obtain possession or control, whether legally or illegally." Black's Law Dictionary (11th ed. 2019). To "take" may similarly mean "to get into one's hands or into one's possession, power, or control: such as *** to seize or capture physically." Merriam-Webster Online Dictionary, https://merriam-webster.com/dictionary/take (last visited May 26, 2023) [https://perma.cc/H74M-AWLP].

¶ 18     Defendant argues he did not gain physical control over the vehicle in question until Aiden left the passenger seat and was standing outside. Stated differently, in defendant's view, he did not

5

take the vehicle while the aggravating factor supporting his conviction existed. Such a restrictive view of "taking" in the context of aggravated vehicular hijacking was expressly rebuked by our supreme court in *People v. Reese*, 2017 IL 120011, ¶¶ 35, 39. In *Reese*, the court held that the offense of vehicular hijacking encompasses more than the limited situation where a driver is dispossessed and the defendant takes actual physical possession of a vehicle. *Id.* ¶¶ 1, 40. Rather, the offense also criminalizes "taking control of a vehicle by force or threat of force, including when the victim remains inside the vehicle." *Id.* ¶ 42.

¶ 19        Here, the commission of the vehicular hijacking occurred within a 30-second timeframe. The surveillance footage shows defendant running up to the Nissan, which was parked at pump 6 at the Clock Tower Shell gas station. He opened the driver's side door while Aiden and Violet were seated in the vehicle. As defendant reached into the vehicle and toward Violet, Aiden opened the passenger door. Defendant then placed his right hand on Violet's back, guided her out of the driver's seat, and sat down. Violet and Aiden exited the vehicle simultaneously. Defendant closed the driver's side door, but Violet immediately reopened the door and began pulling at his arm. In the process of speeding off, defendant ran over Violet's foot.

¶ 20        While it is true that the evidence reflects no passengers were inside the vehicle by the time defendant sped off, this is not the determinative time frame for when the offense commenced. Rather, we find, in the light most favorable to the State, a rational trier of fact could have found defendant took possession or control of the vehicle through the physical action of removing Violet as the driver. Defendant used force to take the vehicle through reaching into the driver's side and, with his right arm, guiding her out of the vehicle. This action occurred while Aiden remained seated in the vehicle as a passenger. Accordingly, we find in viewing the evidence most favorable to the State that the aggravating factor existed at the time of the offense.

¶ 21                                    III. CONCLUSION

¶ 22            The judgment of the circuit court of La Salle County is affirmed.

¶ 23            Affirmed.

*People v. Coleman*, 2023 IL App (3d) 220191

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of La Salle County, No. 21-CF-395; the Hon. Cynthia M. Raccuglia, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Karalis, and Emily A. Brandon, of State Appellate Defender's Office, of Ottawa, for appellant. |
| **Attorneys for Appellee:** | Joseph Navarro, State's Attorney, of Ottawa (Patrick Delfino, Thomas D. Arado, and Jessica A. Theodoratos, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |