NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 170853-U

NO. 4-17-0853

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 17, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| OSCAR BROWN, | ) | No. 13CF101 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Rudolph M. Braud Jr., |
| | ) | Judge Presiding. |

PRESIDING JUSTICE STEIGMANN delivered the judgment of the court.
Justices Harris and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The appellate court reversed defendant's conviction and remanded for further proceedings because the trial court improperly admonished defendant of his potential sentence when the court accepted his waiver of counsel.

¶ 2        In January 2013, the State charged defendant, Oscar Brown, with three counts of first degree murder (720 ILCS 5/9-1(a) (West 2012)), one count of aggravated battery with a firearm (*id.* § 12-3.05(e)(1)), one count of unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)), and one count of being an armed habitual criminal (*id.* § 24-1.7(a)).

¶ 3        Prior to trial, the trial court granted defendant's motion to sever the murder and aggravated battery counts from the unlawful possession and armed habitual criminal counts. The jury trial for the murder and aggravated battery counts proceeded first, at which defendant was represented by defense counsel. Defendant was ultimately found guilty of the lesser included

offense of involuntary manslaughter and not guilty of aggravated battery.

¶ 4        Prior to the second trial that was scheduled to be held shortly after defendant's first trial and before defendant was to be sentenced upon his involuntary manslaughter conviction, defendant told the trial court he was unhappy with his counsel and wanted to proceed *pro se*. The court explained the charges against him and admonished defendant of his rights. However, the court did not tell defendant that he was eligible to be sentenced consecutively to whatever sentence the court might impose for defendant's involuntary manslaughter conviction.

¶ 5        At defendant's second jury trial, he proceeded *pro se*. Ultimately, the jury convicted defendant of both being an armed habitual criminal and unlawful use of a weapon by a felon.

¶ 6        At sentencing on all convictions, the State argued for imposition of the maximum sentences of 10 years in prison for involuntary manslaughter and 30 years in prison for being an armed habitual criminal, to be served consecutively to one another, and did not provide a sentencing recommendation for unlawful use of a weapon by a felon which would merge with that sentence. Defendant requested six years' imprisonment. The court sentenced defendant to 29 years in prison for being an armed habitual criminal and 9 years in prison for involuntary manslaughter, to be served consecutively.

¶ 7        Defendant appeals, arguing that (1) his pretrial waiver of counsel was invalid because he was improperly admonished and (2) his sentence was excessive. We agree with defendant's first argument and do not reach his second. Accordingly, we reverse the trial court's judgment and remand for further proceedings.

¶ 8                          I. BACKGROUND

¶ 9                          A. Pretrial and the First Trial

¶ 10　　　　　In January 2013, the State charged defendant with three counts of first-degree murder (*id.* § 9-1(a)), one count of aggravated battery with a firearm (*id.* § 12-3.05(e)(1)), one count of unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)), and one count of being an armed habitual criminal (*id.* § 24-1.7(a)). These counts generally claimed that defendant (1) murdered Charles Rice, (2) shot Richard Williams, and (3) possessed a gun despite his criminal background forbidding him from carrying a gun.

¶ 11　　　　　Because our decision in this case turns on defendant's choice to proceed *pro se* and the admonishments related to that decision, we need discuss only the procedural context of those matters.

¶ 12　　　　　Prior to trial, the trial court granted defendant's June 2016 motions to sever the murder and aggravated battery counts from the unlawful possession and armed habitual criminal counts. The jury trial for the murder and aggravated battery counts proceeded first, at which defendant was represented by defense counsel. In October 2016, defendant was ultimately found guilty of the lesser included offense of involuntary manslaughter and not guilty of aggravated battery.

¶ 13　　　　　　　　　　　　B. Motion for a New Trial

¶ 14　　　　　Following defendant's first trial, defendant moved for a new trial in relation to the charge of involuntary manslaughter. In March 2017, the trial court conducted a hearing on that motion at which defendant appeared with his counsel. At that hearing, counsel noted that defendant wanted him to argue that (1) the Springfield Police Department planted evidence and (2) police officers were at the scene prior to the shooting but left, thereby allowing the shooting to happen. Counsel explained to the court that he did not believe the claims had merit but wanted to ensure a record was made as to defendant's claims. Counsel for defendant raised another claim

that he did believe had merit—specifically, that the State made improper comments about defendant's post-arrest silence. The court denied the motion for a new trial.

¶ 15  The trial court discussed proceeding to sentencing in the future and noted that defendant had been presented with a global offer of 25 years in prison that would address the severed counts for which defendant was still awaiting trial. (By "global offer," we mean an offer that resolves all of the pending charges and convictions at once.) Counsel for defendant explained that defendant rejected the offer but suggested that he would like the court to ask defendant directly about whether he would accept or reject the offer. Before doing so, the court turned to Assistant State's Attorney Brian Shaw and asked, "Have you made a global offer to [defendant's counsel] and [defendant] to dispose of this cause in its entirety?" Shaw replied,

> "Your Honor, twenty-five years would certainly be *concurrent* to whatever he was sentenced in regards to the involuntary manslaughter. If he were to accept that, certainly, I think that [defendant's counsel] and I could fashion some—some years in regards to that count. However, it's somewhat moot in regards to the idea that it would be eaten up at the same time. Those are *mandatory concurrent*." (Emphases added).

¶ 16  The trial court asked defendant what he would like to do about the offer, and defendant said, "I reject that offer. I just want to endure going to trial. Just got to go through it."

¶ 17                    C. The Final Pretrial Hearing

¶ 18  In July 2017, defendant appeared before the trial court with counsel for a final pretrial hearing regarding the remaining counts. Shaw again appeared on behalf of the State. The court noted that defendant had sent letters mentioning that he wanted to proceed *pro se* and asked defendant if he wanted to represent himself. Defendant ultimately decided he wanted to proceed

*pro se*.

¶ 19　　　The trial court then admonished defendant of his rights pursuant to Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) in relation to the remaining charges and asked Shaw to explain the possible sentencing ranges. Shaw stated that regarding the possession of a weapon by a felon charge, defendant was extended term eligible and subject to a nonprobationable sentence of 3 years to 14 years in prison. Shaw stated that regarding the armed habitual criminal charge, defendant was subject to a sentence of 6 years to 30 years in prison.

¶ 20　　　The trial court then asked Shaw, "Let me ask you this, and again we've continued this, this sentencing [on the involuntary manslaughter conviction], based on the outcome of the last remaining counts. Any sentence imposed on the jury verdict, how would that stand with respect to the remaining counts, Mr. Shaw?"

¶ 21　　　Shaw replied, "They would be *concurrent*." (Emphasis added.).

¶ 22　　　Later in the hearing, the trial court asked Shaw, "So based on the admonitions, Mr. Shaw, are you satisfied with respect to [Rule] 401(a) that we covered everything we needed to?" Shaw replied, "Yes."

¶ 23　　　After defendant's counsel was discharged, the trial court asked defendant, "Do you want to continue the sentencing [on the involuntary manslaughter conviction] on your motion so that we can deal with the last remaining counts; is that accurate?" To this, defendant responded, "If I take the sentencing today, *is the sentencing still going to be ran* [*sic*] *all together with whatever goes on in the end*?" (Emphasis added.). The court told defendant, "That's correct." Defendant then told the court that he would like to proceed with sentencing. However, the court ultimately continued the case to the end of July for sentencing and a hearing on defendant's motion to reconsider the court's order denying a new trial. Before the end of the

hearing, the State revoked all offers.

¶ 24                    D. Hearing on the Motion to Reconsider

¶ 25        Later in July 2017, defendant argued his motion to reconsider the trial court's denial of his motion for a new trial, and the trial court denied the motion to reconsider. The parties and the court then discussed whether sentencing should proceed that day. The State proposed that the court postpone sentencing until after the second jury trial so that if defendant was found guilty in that trial, the court could conduct both sentencings on the same day.

¶ 26        Defendant responded that "the time is going to be ran [*sic*] together," and he objected to a continuance for sentencing. He added that he wanted to be sentenced immediately. However, the trial court ultimately continued the cause for sentencing after the second jury trial.

¶ 27                    E. The Second Jury Trial and Sentencing

¶ 28        In October 2017, at the second jury trial, defendant proceeded *pro se*, and the jury convicted him of both being an armed habitual criminal and unlawful use of a weapon by a felon.

¶ 29        In November 2017, the trial court conducted a sentencing hearing regarding all of defendant's convictions. At the beginning of that hearing, the court asked Assistant State's Attorney Shaw, "So, with respect to the sentence that is given out by the Court at some point this afternoon, my recollection, based on whatever sentence is imposed or just they're going to merge; correct?" Shaw replied, "With regards to the armed habitual and possession of a weapon of a felon, those two merge. Certainly, *they can be concurrent or consecutive*, I believe, in regards to the involuntary manslaughter [and] possession of weapon by a felon." (Emphasis added.).

¶ 30        In aggravation, Shaw presented a victim impact statement and the testimony of the victim's mother and younger brother. Shaw recommended a 30-year sentence for the armed

habitual criminal offense and a 10-year sentence for the involuntary manslaughter offense. Shaw asked the trial court to use its discretion and impose *consecutive* sentences. (We note that this recommendation for consecutive sentences occurred (1) approximately four months after Shaw informed the court and defendant that any sentences that might be imposed if defendant were convicted of these counts would be *concurrent* with his sentence for involuntary manslaughter and (2) approximately nine months after he described the offenses as *mandatory concurrent*.) Defendant requested six years' imprisonment. The court sentenced defendant to 29 years in prison for being an armed habitual criminal and 9 years in prison for involuntary manslaughter, to be served consecutively. Defendant then moved to reconsider the sentence, and the court denied the motion. This appeal followed.

¶ 31                                    II. ANALYSIS

¶ 32        Defendant appeals, arguing that (1) his pretrial waiver of counsel was invalid because he was improperly admonished and (2) his sentence was excessive. Because we agree with defendant's waiver of counsel claim, we address only that claim.

¶ 33                              A. Waiver of Counsel

¶ 34        A defendant may waive his right to counsel, but for a defendant's waiver to be valid, the court must first inform the defendant of the charges against him, his right to an appointed attorney, and the minimum and maximum sentences he faces if convicted. Ill. S. Ct. R. 401(a) (eff. July 1, 1984).

¶ 35        Criminal defendants can choose to proceed *pro se* only after a knowing, voluntary, and intelligent waiver of counsel. *People v. Reese*, 2017 IL 120011, ¶ 62, 102 N.E.3d 126. "Substantial compliance is sufficient for a valid waiver of counsel if the record indicates the waiver was made knowingly and intelligently and the trial court's admonishment did not

- 7 -

prejudice the defendant's rights." *Id.*

¶ 36        The admonitions must include:

"(1) the nature of the charge;

(2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions *or consecutive sentences*; and

(3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court." (Emphasis added.) Ill. S. Ct. R. 401(a) (eff. July 1, 1984).

¶ 37                                B. This Case

¶ 38        The circumstances of this case demonstrate manifest error occurred. Defendant was not merely uninformed but in fact misinformed on two occasions about the possible sentences he faced. First, in March 2017, when discussing the global plea offer, Assistant State's Attorney Shaw stated that whatever sentence defendant received for the involuntary manslaughter count would be "moot" because the counts are "mandatory concurrent." Second, at the pretrial hearing in July 2017, just prior to permitting defendant to proceed *pro se*, the trial court asked Shaw to explain the possible sentencing ranges. Shaw did so, and the court asked how a sentence following trial would "stand with respect to the remaining counts," and Shaw replied, "They would be concurrent." Defendant, now having been told the wrong information twice, then waived counsel and opted to proceed *pro se*.

¶ 39        The record demonstrates that defendant understood that his sentences would be concurrent. First, immediately following his waiver of counsel, he asked, "Is the sentencing still going to be ran [*sic*] all together with whatever goes on in the end?" The trial court told him, "That's correct." Second, in July 2017, during a debate about whether to have the sentencing for

- 8 -

involuntary manslaughter before or after the second jury trial, defendant stated that because "the time is going to be ran [*sic*] together," he would object to continuing the case for sentencing and would rather be sentenced that day. These circumstances demonstrate that defendant was not only told the wrong information, but he in fact understood that his sentences would not be consecutive.

¶ 40       Finally, at the sentencing hearing in November 2017, Shaw, the same assistant state's attorney who told defendant and the trial court on multiple occasions that the sentences would be concurrent, argued for consecutive sentences. The trial court ultimately imposed consecutive sentences in contravention to the admonitions given to defendant. Accordingly, we conclude the trial court failed to comply with Rule 401(a).

¶ 41       The State relies on *People v. Wright*, 2017 IL 119561, 911 N.E.3d 826, to argue that in this case the trial court substantially complied with Illinois Supreme Court Rule 401(a) (eff. July 1, 1984). However, in *Wright*, the court determined that the defendant was not prejudiced by any potential error because (1) defendant made no allegation that he would not have represented himself if he had known the true sentence and (2) the State asked for, and the trial court imposed, a sentence within the range stated by the court in admonishments. *Id.* ¶ 56. In this case, that second factor is completely absent. The State asked for, and the trial court imposed, consecutive sentences, which is contrary to the admonishments defendant received.

¶ 42       Because defendant was not admonished in accordance with Rule 401(a), we reverse and remand for further proceedings. We need not reach, and express no position on, defendant's argument that his sentence was excessive.

¶ 43                               III. CONCLUSION

¶ 44       For the reasons stated, we reverse and remand for further proceedings.

¶ 45        Reversed and remanded.