2022 IL App (3d) 190151

Opinion filed July 25, 2022

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | Appeal No. 3-19-0151 |
| v. | ) ) | Circuit No. 18-CF-94 |
| ABRIECE DAVONTE OWENS, | ) ) | Honorable Paul P. Gilfillan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McDADE delivered the judgment of the court, with opinion.
Justices Hauptman and Holdridge concurred in the judgment and opinion.

**OPINION**

¶ 1       After a jury trial in the circuit court of Peoria County, defendant, Abriece Davonte Owens, was found guilty of home invasion, residential burglary, and unlawful possession of a stolen motor vehicle. On appeal, he challenges his convictions, arguing that plain error occurred when the trial court ordered that he be placed in shackles (or handcuffs) during his cross-examination by the State. Alternatively, he argues that his trial counsel was ineffective in failing to object to the trial court's order. For the reasons that follow, although we find the trial court abused its discretion and error occurred, Owens is still not entitled to the relief requested. We, therefore, affirm his convictions.

¶ 3        On March 6, 2018, the State charged Owens by indictment with four counts of home invasion (720 ILCS 5/19-6(a)(3) (West 2018)) (counts I and II), (*id.* § 19-6(a)(2)) (counts III and IV)); one count of armed robbery (*id.* § 18-2(a)(2) (count V)); one count of residential burglary (*id.* § 19-3(a)) (count VI), and one count of possession of a stolen motor vehicle (625 ILCS 5/4-103(a)(1) (West 2018)) (count VII). Additionally, the State charged Owens with unlawful possession of a weapon by a felon (UPWF) (720 ILCS 5/24-1.1(a) (West 2018)) (count VIII). The UPWF charge was severed from the other charges prior to trial.[1]

¶ 4        Owens was initially represented by a member of the public defender's office, and his case was set for trial in December 2018. However, a motion *in limine*, filed just before the trial was set to commence, delayed the proceeding. Before the motion could be heard, Owens filed a *pro se* motion to dismiss counsel, preferring to represent himself. That motion was granted, and although he was only then provided with a copy of the State's discovery, the trial judge made it clear that he would not change the date for trial.

¶ 5        On the day of trial, Owens appeared in court and indicated that he had not had sufficient time to prepare and was not ready for trial. The court persisted in going forward that day, indicating to Owens that he should be prepared to pick a jury that afternoon, review the State's discovery that evening, and be ready to begin again the next day. Thereafter, Owens participated in choosing a jury. Although Owens knew he was to return the next morning, he failed to appear.

---

[1]The record indicates that the State initially charged defendant with eight counts on March 6, 2018. However, "to correct a name," the State added counts IX-XV, which were eventually renumbered as counts I-VII, on March 27, 2018. The State dismissed seven of the eight original counts but kept the UPWF charge as an additional charge.

The court received an e-mail from a correctional officer indicating that Owens refused to leave his jail cell.

¶ 6     After considering several possible avenues to pursue, the court called the assistant public defender who had initially been assigned to the case to inquire whether she would be willing to resume her representation of Owens. She acceded to that request and agreed to travel to the jail to consult with him. Owens then appeared before the court via video and explained that he had discussed filing additional pretrial motions with his attorney and generally complained about her not complying with his wishes. After the court addressed what it characterized as Owens's stalling tactics, it explained the risk Owens was taking in going forward without an attorney and the disadvantage he was creating for himself. Owens finally agreed to allow the assistant public defender to resume her representation by saying, "You can put Ms. Justice back in" and stating that he would be in court with her the next day. After conferring with Owens later that day, defense counsel and the prosecutor appeared before the court. At that time, defense counsel moved for, and the court granted, a mistrial. A new trial was scheduled for about a month later.

¶ 7     At trial, the State's evidence showed that a person entered the home of Roger and Barbara Kleist on February 8, 2018. Barbara responded to a knock on the door around 8:30 p.m. and opened the door, thinking it was her daughter. She identified Owens as the young man who was at the door pointing a gun at her. He told her to sit in a chair. She stated that she heard him in the bedroom going through drawers. He emerged from the room wearing a mask, duct taped Barbara to the chair, went upstairs and returned with Roger, whom he also restrained. Roger was not able to identify Owens at trial. He testified that the man took his car keys and wallet. After waiting to be sure the man had left, he got himself free and contacted the police. Officer Elizabeth Blair responded to the home. She took the description of the person who attacked the

3

Kleists and broadcasted it over the radio. The Kleists reported that their blue Chevy Malibu was missing from the garage and provided the plate number.

¶ 8        The Kleist's car was equipped with an OnStar security tracking service. Detective Brian Terry of the Peoria police asked dispatch to contact OnStar and track the car. Terry drove toward the tracked location of the car and found it had gone off the road near a cattle farm in Lewistown. The car was running and in gear, with the windows open and the doors closed. Terry opened the driver's side door to turn off the car and left the door open. Owens was already in custody. A gun was retrieved from the car and placed in evidence.

¶ 9        Deputy Troy Chisum testified that he was on US 24 responding to the dispatch when he saw a person whom he identified as Owens driving a blue car with the matching plate numbers. He did a U-turn to give pursuit. OnStar remotely shut down the car, and it veered off the road. Owens tried to flee on foot, but he was apprehended by another deputy. Owens was interviewed at the police station, and his interview was recorded. In it, he admits to the home invasion and corroborates the Kleists' testimony.

¶ 10       Testifying in his own defense, Owens said he was walking to his brother's home when he came across a blue Chevy with the keys still in it and the engine running. He decided to drive the car away. He testified that the mask, glove, gun, and brown coat were in the car when he got into it. He also discovered a wallet in the console but threw it out the window in case he got stopped by police. He was driving that car toward Quincy on US 24 when he passed a Fulton County Sheriff's Department officer and saw the officer do a U-turn in the rearview mirror. Owens sped up, but the car began to swerve and then it headed off the road, toward a barn. Once the car came to a rest, he got out and ran. Owens admitted that his trial testimony was different from what he

4

said on the recording. He explained that, after five hours at the station, he told the police what he thought they wanted to hear.

¶ 11 While being cross-examined, Owens answered several questions posed by the prosecutor before stating: "I been—sitting in the county for 362 days, man. I didn't come here to deal with this. You can just send me back to my cell." Despite the court's order that he answer the questions, Owens persisted in his refusal to answer. Nonetheless, in response to a question posed by the prosecutor, Owens asked "[w]hy am I being charged with possession of a weapon by a felon?" and later remarked, "[s]ee, I'm done talking to you, man. Send me back to county." At this time, the court removed the jury and instructed Owens that he was not entitled to refuse to answer the prosecutor's questions. The court directed defense counsel to conference with Owens.

¶ 12 Following a brief break and still outside the presence of the jury, the court described Owens's attitude as "one of defiance and refusal to answer questions or to proceed any further with cross-examination." The court remarked that Owens had attempted "to throw an additional wrench into the works" by mentioning being charged with UPWF, despite knowing that the charge was to be kept from the jury. At this time, defense counsel requested a mistrial because the jury now knew about the severed UPWF charge and about the period of time Owens had spent in custody. The court denied defendant's motion for a mistrial and stated:

"Now, I will say this. [Defendant], as we move forward here today and if you are allowed the opportunity to take the stand again, which is what normal procedure would be, I want you to know that if things go south from here, and that is with your actions or behavior, and if you remain present in the courtroom or are removed from the courtroom due

5

to your own actions, you are going to waive your right to be present for the rest of the trial.

You will waive your right on your own to consult with your attorney to cross-examine witnesses, although she will remain and do her best to cross-examine witnesses in your absence. Trial will proceed in your absence, as well as potential jury deliberations, receipt of the verdict, and potential sentencing thereafter.

Did you just hear and understand what I said, [defendant]?

Show that defendant Mr. Owens is staring at the Court and willfully refusing to answer that very straightforward question.

Also, during the break, the deputy approached me indicating that the defendant's attitude is also changed for the worse while in the presence of the deputy, such that the defendant at the present time is shackled at the wrists. And the defendant mentioned words to the effect to the officer, who mentioned to me, that, 'You might as well leave the shackles on my wrists.'

That is the exact intention of the Court, so I will take up the defendant on his offer to remain shackled. There is no way that I am going to put anybody in this courtroom at risk for this defendant's obstinate and obstructionist behavior and the prevention of this case from being tried to conclusion today.

Now, with that said, [defense counsel], does your client intend on taking the stand and answering questions?"

Defense counsel indicated that defendant shook his head no.

¶ 13    Next, the court rejected the State's request to strike the entirety of Owens's testimony and directed the State to continue its cross-examination. The court ordered Owens to answer the State's questions when proceedings resumed or be held in contempt and sentenced to jail time. The court ordered defendant to remain at his counsel's table, shackled and flanked by officers, during questioning.

¶ 14    After the jury returned to the courtroom, the court stated:

> "All right. As the jury knows, we're in the midst of cross-examination of the defendant by the state's attorney. As opposed to putting the defendant on the witness stand, I'm going to keep the defendant at his defense counsel table in his present position.
>
> And I'm asking the defendant not to stand or to move in any way other than as he presents himself to the jury at this point. My point being I'm going to allow the questions to continue from the state's attorney, who will be up here, and the questions to be asked of him at counsel table in his present form, in his seated position."

When defendant refused to answer the first question posed by the prosecutor, the court excused the jury, and the following exchange occurred:

> "THE COURT: All right. During that question, as soon as the question was asked and a response was being awaited [*sic*] for by [defendant], [defendant] purposely brought his hands above the table, in contravention of this Court's order, to show the jury his shackles.

7

THE DEFENDANT: You didn't tell me not—you didn't tell me not to move my hands. You told me to stay seated. I stayed seated.

THE COURT: All right. I've heard your explanation. I find it to be one hundred percent bogus and a continuation of your efforts to obstruct justice in this case. You are sentenced to 90 days in jail as a result of your behavior right there for direct criminal contempt. Order to follow.

All right. Keep your hands under the table please.

Bring the jury back in.

If [defendant] chooses to keep his hands above the table, officer, do not force him to keep them below the table.

Bring the jury in."

Owens persisted in his refusal to answer questions, stating, "I would like to go back to my cell." The court sent the jury to lunch and admonished Owens that, if he refused to return to the courtroom following lunch, he would be tried *in absentia*. The court noted that Owens refused to put his hands underneath the table when the jury came in for the second time. Owens also indicated to the court that he would persist in his refusal to answer the State's questions. Moments before the jury returned, the court stated, "[Owens], keep your hands below the table. The Court finds for the same reasons that you should be shackled at the wrists. So keep them below the table, the purpose being so the jury doesn't see that. That's a court order."

¶ 15    When proceedings resumed, Owens refused to answer questions. At this point, the parties rested, and the court denied defense counsel's motion for a directed verdict. The jury found Owens guilty on counts III and IV (home invasion), count VI (residential burglary), and count VII (unlawful possession of a stolen motor vehicle). The jury found him not guilty on counts I

8

and II (home invasion) and count V (armed robbery). Following the verdict, the court dismissed count VIII, the UPWF charge.[2]

¶ 16      On March 19, 2019, Owens filed a motion for a judgment of acquittal notwithstanding the verdict or for a new trial (motion for a new trial), arguing, among other things, that the court erred when it ordered that Owens be handcuffed in the jury's presence. On March 20, 2019, the circuit court denied Owens's motion for a new trial and sentenced him to 46 years in the Illinois Department of Corrections on count III, a consecutive 6-year term on count VI, and a concurrent 3-year term on count VII. Owens filed a timely notice of appeal on March 22, 2019.

¶ 17                                   ANALYSIS

¶ 18      On appeal, Owens seeks reversal of his convictions, arguing (1) that the trial court committed plain error in failing to hold a formal *Boose* hearing (see *People v. Boose*, 66 Ill. 2d 261 (1977)) before handcuffing him during his trial testimony and (2) that trial counsel was ineffective for not objecting to him being handcuffed. We affirm his convictions.

¶ 19      Before proceeding with our analysis, we note that this is the second version of our decision in this case. In the original opinion, we reached the same result but upon different reasoning, stating, *inter alia*, that the decision in *People v. Allen*, 222 Ill. 2d 340 (2006), created "precedential ambiguity" relative to cases pertinent on this issue. That statement was erroneous. Shortly after to our decision and relevant to it, the supreme court decided *People v. Moon*, 2022 IL 125959, and Owens subsequently filed a petition for rehearing. We granted the petition and ordered additional briefing from the parties. That earlier decision has now been withdrawn and this opinion is issued in its stead. Our corrected analysis is found below (*infra* ¶¶ 29-35).

---

[2]Based on this record, this court presumes the dismissal of count VIII was at the State's request; however, this discussion was held off the record.

¶ 20                    I. Shackling Without a Formal *Boose* Hearing

¶ 21                         A. Whether Error Occurred

¶ 22        A trial court should not physically restrain (or shackle) a defendant in court unless upon a showing of manifest need. *Boose*, 66 Ill. 2d at 265-66. The court should state on the record its reasons for shackling the defendant "and provide defense counsel with an opportunity to offer reasons" against shackling his or her client. *People v. Urdiales*, 225 Ill. 2d 354, 416 (2007). The court's failure to follow the procedure as established in *Boose* and subsequently codified in Illinois Supreme Court Rule 430 (eff. July 1, 2010) is a violation of the defendant's due process rights. *People v. Reese*, 2017 IL 120011, ¶ 49.

¶ 23        Owens's conduct throughout the prosecution in the circuit court seems sufficient to try the patience of a saint, and we do not require judges to be saints. They are, however, charged with the responsibility of ensuring that trials over which they preside are fair and comport with due process. To this end, our supreme court has created a body of procedural rules to assist judges in meeting that responsibility. As the court itself has stated, these rules "are not suggestions [or aspirations]; rather, they have the force of law, and the presumption must be that they will be obeyed and enforced as written." *People v. Campbell*, 224 Ill. 2d 80, 87 (2006).

¶ 24        Rule 430 requires the court to conduct a separate hearing, outside the presence of the jury, to determine whether shackling the defendant is necessary. *Reese*, 2017 IL 120011, ¶ 48; Ill. S. Ct. R. 430 (eff. July 1, 2010). Following the hearing, the court must make specific findings on the 10 factors enumerated in Rule 430, weighing the defendant's right to due process against the manifest need for shackling him. Ill. S. Ct. R. 430 (eff. July 1, 2010). The manifest need must outweigh the defendant's right to be free from restraints. *Id.* Whether there is a need for

shackling is a determination within the discretion of the circuit court, and its finding will not be reversed absent an abuse of discretion. *Urdiales*, 225 Ill. 2d at 416.

¶ 25    Here, the State concedes that no formal *Boose* hearing took place. Instead, the State asserts "that the record clearly provides a showing of need for [the] restraint, therefore a formal *Boose* hearing was not required." We disagree. First, we can only discern one factor on which the trial court relied to physically restrain Owens. After the deputy reported his opinion that Owens's "attitude is also changed for the worse" and that Owens had said words to the effect of "[y]ou might as well leave the shackles on my wrists," the trial court made no inquiry that can be gleaned from the record regarding why the shackles were put on or whether their placement was warranted. Instead, it merely said that was its "exact intention" and it would "take up the defendant on his offer to remain shackled." In amplification of this statement, the court stated that there was no way the court would "put anybody in this courtroom at risk," not of physical harm but "for defendant's obstinate and obstructionist behavior and the prevention of this case from being tried to conclusion today." In short, the court abdicated its responsibility under *Boose* and Rule 430. See *Allen*, 222 Ill. 2d at 349 (noting "abdication of the trial court's responsibility [under Rule 430] is not acceptable").

¶ 26    Second, while "evidence of any threats made by [a] defendant to harm others, cause a disturbance, or to be self-destructive" is a factor to be considered under Rule 430 (Ill. S. Ct. R. 430(6) (eff. July 1, 2010)), Owens's alleged statement does not establish this factor. The statement is unverified and was not subjected to the kind of examination that *Boose* intended to foster. Additionally, nothing in the record showed that Owens's obstinance would lead to a physical disturbance or would place any persons in the courtroom at risk. Moreover, "a single reason for shackling [a defendant] has generally been held to be insufficient justification for the

11

restraint." *Urdiales*, 225 Ill. 2d at 416. The court articulated no finding relevant to any of the nine other factors enumerated in Rule 430 to support its decision. See *Allen*, 222 Ill. 2d at 348 (finding an abuse of discretion where "no other '*Boose* factors' supported" the court's decision).

¶ 27 And third, the State cites no authority—and we have found none—to support its assertions that a *Boose* hearing is unnecessary where the record establishes an unarticulated need for shackling a defendant. *Boose* and Rule 430 are derived from defendants' due process rights. *In re Benny M.*, 2017 IL 120133, ¶ 29. The error occurs not because the need was not manifest but because the defendant was denied the required safeguards of his due process rights. See *Allen*, 222 Ill. 2d at 349 (holding "the trial court's failure to follow the procedures set forth in *Boose* *** constitutes a due process violation"). The trial court did not provide defense counsel an opportunity to argue against shackling Owens or offer an alternative. That alone is an abuse of the court's discretion, and thus, error occurred. *Id.*

¶ 28                                  B. Whether Reversible Error Occurred

¶ 29 Having found error, we must now determine whether it amounted to reversible error. Owens concedes that he forfeited review of this issue by not raising a timely objection to the trial court's shackling decision. He, however, argues that *Boose* violations are *per se* reversible errors. He contends that our supreme court has "equated" second-prong plain error with structural error. Because structural errors require automatic reversal, all second-prong errors require the same. But even assuming that all instances of second-prong plain error satisfy the standard for structural error, Owens's argument still fails. It turns on whether all instances of a *Boose* violation amount to second-prong plain error. In his response to our request for additional briefing, Owens offers no answer to this question.

12

¶ 30        Structural error is a unique designation granted "only in a 'very limited class of cases.' " (Internal quotation marks omitted.) *People v. Glasper*, 234 Ill. 2d 173, 198 (2009) (quoting *Neder v. United States*, 527 U.S. 1, 8 (1999)). "In such cases, the error 'necessarily render[s] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.' " (Internal quotation marks omitted.) *People v. Rivera*, 227 Ill. 2d 1, 20 (2007) (quoting *Washington v. Recuenco*, 548 U.S. 212, 218-19 (2006)). The fact of the error alone requires "automatic reversal." *Neder*, 527 U.S. at 8. That is so because "harmless-error review would not apply to an error considered 'structural' in nature." *Rivera*, 227 Ill. 2d at 19. "The violation of a supreme court rule does not mandate reversal in every case"; some violations are subject to harmless-error review. *Glasper*, 234 Ill. 2d at 193. Our supreme court has applied this doctrine to *Boose*, holding that Rule 430 violations are subject to the harmless-error analysis—not *per se* reversible—and, therefore, not structural error. *Reese*, 2017 IL 120011, ¶¶ 49-50.

¶ 31        *Allen* applies the same principle in the context of the plain-error doctrine. See *Allen*, 222 Ill. 2d at 359 (concluding that *Boose* violations are not *per se* reversible). The doctrine "is a narrow and limited exception to the general waiver rule." (Internal quotation marks omitted.) *People v. Herron*, 215 Ill. 2d 167, 177 (2005). Defendants may obtain redress for unpreserved errors that are "clear and obvious" and "that may have deprived [them] of a fair trial." *People v. Williams*, 2022 IL 126918, ¶ 55. A fair trial is denied where (1) the evidence "is so closely balanced that the jury's guilty verdict may have resulted from the error" or (2) "the error is so serious that the defendant was denied a substantial right." *Herron*, 215 Ill. 2d at 178-79. Defendants bear the burden of persuasion under either prong, but the focus in the second prong is on the severity of the error itself—not its prejudicial effect. *Id.* at 187. Defendants "cannot obtain relief on an unpreserved error under the plain-error doctrine if [they] would not have been

entitled to relief on the same error if preserved." *Williams*, 2022 IL 126918, ¶ 49. Similarly, defendants cannot claim that an error is *per se* reversible under the plain-error doctrine unless it falls within the class of cases designated as involving structural error. *People v. Averett*, 237 Ill. 2d 1, 13 (2010).

¶ 32        Owens contends that *Moon* requires a different understanding of the second prong. But *Moon* addresses a narrow question of first impression: whether "the failure to properly swear the jury—that is, administer the trial oath—is structural error." (Internal quotation marks omitted.) *Moon*, 2022 IL 125959, ¶ 14. Because that error was not preserved, the defendant had to avail himself of the plain-error doctrine. *Id.* ¶ 17. To successfully allege structural error under the doctrine, the defendant had to show that the error was "comparable" to the class of cases "identified" by the United States Supreme Court as involving structural error.[3] *Id.* ¶ 30. An otherwise serious error but (1) failing to create "a complete denial of counsel or trial by a biased adjudicator," (2) "subject to harmless-error review," (3) "not necessarily render[ing] a trial fundamentally unfair or unreliable," and (4) "not affect[ing] the framework of the trial process" will not be designated as structural. *Averett*, 237 Ill. 2d at 13-14. Owens's *Boose* violation does not satisfy any of the *Averett* requirements. Nor is it "an error of such gravity that it" "deprives [Owens] of a basic protection afforded at common law" or "guaranteed in our state constitution." *Moon*, 2022 IL 125959, ¶ 64.

¶ 33        Owens need not allege or prove structural error, however, to obtain reversal for second-prong plain error. Relief will be granted where a defendant shows that the error "affected the fairness of [his] trial and challenged the integrity of the judicial process." (Internal quotation

_____

[3]Those cases "include a complete denial of counsel, denial of self-representation at trial, trial before a biased judge, denial of a public trial, racial discrimination in the selection of a grand jury, and a defective reasonable doubt instruction." *Averett*, 237 Ill. 2d at 13 (citing *Recuenco*, 548 U.S. 212 at 218 n.2)).

marks omitted.) *Allen*, 222 Ill. 2d at 359. A defendant must prove "that his presumption of innocence, ability to assist his counsel, or the dignity of the proceedings was compromised." *Id.* at 353. Owens has failed to do so.

¶ 34    Owens was not shackled until he became obstructive and uncooperative during his own cross-examination by the State. He was the last witness, and he had ample prior opportunity to assist his attorney; he even testified on direct examination without any difficulty. But on cross-examination he voluntarily and without any claim of right or justification and contrary to the trial court's explicit directives refused to answer the State's questions. The record does not show that he was unable to assist his attorney while he was in shackles for the brief duration until the parties rested and the jury returned its verdict. The record also does not show that the dignity of the trial was affected by his restraints. Its dignity was already offended by the conduct of Owens himself. Owens was only handcuffed during his cross-examination and later restricted to sitting at counsel table in response to his conduct. Finally, the record does not show that his presumption of innocence was compromised. His own obstructive actions provided the jury with a probable explanation for his shackling unrelated to his actual guilt or innocence of the charges or his actual level of threat in the courtroom. We are also unable to determine on this record whether the jury would have had sufficient opportunity to actually discern that he was in manacles. In fact, his hands and handcuffs were concealed until Owens twice disregarded the trial court's order to keep them beneath the tabletop. Each time he exposed them, the court immediately removed the jury from the courtroom, admonished Owens before ultimately holding him in contempt, and terminated his cross-examination by the State.

15

¶ 35        Given the *Averett* requirements and the standard set in *Allen*, we hold that the trial court's failure to conduct a formal *Boose* hearing is not reversible error, and we affirm Owens's convictions.

¶ 36                                II. Ineffective Assistance of Counsel

¶ 37        Alternatively, Owens alleges that his trial counsel was ineffective for not objecting to the trial court's decision to handcuff him during trial. Claims of ineffective assistance of counsel are reviewed under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Johnson*, 2021 IL 126291, ¶ 52. To prevail on such a claim, a defendant must show that counsel's performance was both deficient and prejudicial. *People v. Curry*, 178 Ill. 2d 509, 518-19 (1997). The parties disagree as to what standard applies to find prejudice. Owens argues that prejudice is inherent and therefore the State must prove beyond a reasonable doubt that the trial court's decision to shackle him did not influence the jury's verdict. In response, the State argues that Owens must show that there was a reasonable probability that the outcome would have been different at trial.

¶ 38        Ordinarily, to establish prejudice, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Johnson*, 2021 IL 126291, ¶ 52 (citing *Strickland*, 466 U.S. at 694). However, prejudice may be presumed where (1) the defendant " 'is denied counsel at a critical stage,' " (2) counsel " 'entirely fails to subject the prosecution's case to meaningful adversarial testing,' " or (3) counsel is called upon to represent a client in circumstances under which no lawyer could provide effective assistance. *People v. Cherry*, 2016 IL 118728, ¶ 25 (quoting *United States v. Cronic*, 466 U.S. 648, 659-61 (1984)). Owens does not make a *Cronic* claim of ineffective assistance of counsel. Instead, he argues that, because shackling a defendant at trial without a

16

*Boose* hearing amounts to structural error, affecting the fairness of his trial, *Strickland* prejudice must be presumed and the State bears the burden of persuasion. We disagree. As previously noted, the supreme court has held in *Allen* that a *Boose* hearing violation does not automatically constitute reversible error; rather an actual showing "that it prevented [the defendant] from obtaining a fair trial" is required. *Allen*, 222 Ill. 2d at 353-54. Therefore, *Strickland* prejudice cannot be presumed, and defendants are required to prove it to establish a successful claim of ineffective assistance of a counsel.

¶ 39    We find the strength of the State's evidence was such that there was no reasonable probability that the result of the proceeding would have been different if counsel had objected to Owens being shackled. At trial, the evidence showed that an armed assailant entered the Kleists' home, restrained them, and took possession of their car. After Roger contacted the police, the responding officer asked dispatch to contact OnStar and track the car. Owens was apprehended while attempting to flee the stolen car after it had been stopped by the OnStar system. Barbara later identified him as the person who entered her home at gun point and restrained her. The State also presented the jury with Owens's video-recorded confession to the crimes charged. The jury subsequently heard and observed him during his testimony refuting the recorded statement, presumably choosing not to find him credible. There is nothing in the record supporting a conclusion that the jury would have found differently if his counsel had objected to the shackles or even if the shackles had not ever been affixed. Therefore, we find no prejudice, and Owens's ineffective assistance claim fails.

¶ 40                                CONCLUSION

¶ 41    The judgment of the circuit court of Peoria County is affirmed.

¶ 42    Affirmed.

17

---

**No. 3-19-0151**

---

| | |
|---|---|
| **Cite as:** | *People v. Owens*, 2022 IL App (3d) 190151 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Peoria County, No. 18-CF-94; the Hon. Paul P. Gilfillan, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Ginger Leigh Odom, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Jodi Hoos, State's Attorney, of Peoria (Patrick Delfino, Thomas D. Arado, and Jessica A. Theodoratos, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

---