**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230234-U

Order filed April 15, 2024

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0234 Circuit No. 22-CF-1633 |
| ANTHONY B. WRIGHT, | ) ) ) | Honorable John Robert Connor, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE ALBRECHT delivered the judgment of the court.
Justice Holdridge concurred in the judgment.
Presiding Justice McDade dissented.

**ORDER**

¶ 1      *Held*:  The court's failure to conduct a hearing before leaving defendant's legs shackled was harmless error.

¶ 2      Defendant, Anthony B. Wright, appeals his conviction for domestic battery, arguing the Will County circuit court violated his due process rights by leaving his legs shackled during the bench trial without first conducting a hearing as required by Illinois Supreme Court Rule 430 (eff.

July 1, 2010) and *People v. Boose*, 66 Ill. 2d 261, 267 (1977) (hereinafter *Boose* hearing). We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        Defendant was charged on October 11, 2022, with aggravated battery (720 ILCS 5/12-3.05 (a)(4) (West 2022)), and three counts of domestic battery (*id.* § 12-3.2(a), (b)) stemming from an October 7, 2022, incident wherein defendant allegedly battered Pamela Wright.

¶ 5        The public defender's office was permitted to withdraw following defendant's request to represent himself on November 1, 2022. Standby counsel was subsequently appointed upon defendant's request. Prior to commencing the three-day bench trial on January 17, 2022, the court addressed defendant's pending *pro se* motion *in limine*. During argument on the motion, standby counsel requested defendant be unshackled. The court agreed. The following exchange then occurred:

> "THE DEPUTY: Do you want the whole thing off or just the handcuffs?
>
> THE COURT: Handcuffs. So he can handle papers more easily.
>
> THE DEFENDANT: Judge, I'm going to object to that.
>
> THE COURT: I understand. That's why we're here today. This is your
>
> opportunity to make your argument. It's your motion [*in limine*] ***."

Defendant's legs remained shackled throughout the bench trial and neither defendant nor standby counsel mentioned the leg shackles again.

¶ 6        Pamela testified she and defendant, her son, lived together at the time of the incident. On October 7, 2022, defendant grabbed Pamela's phone out of her hand and began "stomping" on her, and hitting her in the ribs and chest area. Pamela believed defendant may have struck her in the neck but did not strike her in the face. Pamela experienced pain in her chest over the next month.

Defendant cross-examined Pamela regarding the events prior to the incident on October 7, 2022. He also asked about her history of high blood pressure.

¶ 7    Will County Sheriff's Deputy Edward Hayes testified that upon his arrival at the residence on October 7, 2022, he found three males in a "bladed stance," including defendant. On cross-examination, Hayes could not remember which individuals were in a "bladed stance." Defendant asked whether the other two individuals were Stephen Orasco and Corey Wright, defendant's brother, as Hayes listed in his report. Hayes responded, "[i]f those are the names that are written." Defendant then asked whether Hayes was aware Corey had been paralyzed since 1996. Hayes responded he was aware the report contained a mistake as Corey was not in a bladed stance. Defendant also confirmed that Hayes did not recall whether he saw a wheelchair in the backyard upon his arrival.

¶ 8    Orasco, who lived in the unit above defendant and Pamela, testified that on October 7, 2022, he heard sounds of a struggle coming from downstairs and Pamela calling his name. Orasco began to walk downstairs but turned around and closed his door after seeing defendant walking up the stairs. Pamela later came to Orasco's door wheezing and complaining of injury to her chest. On cross-examination, defendant asked whether Orasco had delivered an Xfinity box to Pamela sometime around the date of the incident, which he had. Defendant also confirmed that Orasco was not in a bladed stance in the backyard.

¶ 9    Will County Sheriff's Deputy Jacob Bowman testified he spoke with Pamela on October 7, 2022. Bowman observed Pamela was experiencing shortness of breath, had redness on the left side of her face, and had swelling to her head. On cross-examination, defendant confirmed with Bowman that Corey was not in a bladed stance. Defendant asked why Bowman did not talk to everyone at the scene to determine whether they had outstanding warrants. Bowman responded

3

that he spoke to anyone who had knowledge of the incident. Police body camera footage was admitted into evidence on defendant's motion.

¶ 10 Prior to the conclusion of the trial, defendant moved for a mistrial, arguing his shackles hurt his defense during examination and cross-examination of witnesses and hindered his ability to communicate effectively throughout trial. At the hearing on the motion, defendant stated, "I feel it was a mistrial because I was shackled." The court denied the motion, ruling that even though it committed error in failing to remove the leg shackles during trial, the error did not amount to plain error because defendant failed to show his restraint caused an unfair trial.

¶ 11 The court found defendant guilty of one count of domestic battery for kicking Pamela about the body, but not guilty of the remaining charges. Defendant filed a motion for a new trial again arguing that he was denied a fair trial as his legs remained shackled. The court denied the motion, ruling that it was harmless error that did not deprive defendant of a fair trial. Defendant was sentenced to five years' imprisonment.

¶ 12 II. ANALYSIS

¶ 13 On appeal, defendant argues the court violated his due process rights by leaving his legs shackled throughout the bench trial without holding a hearing pursuant to Rule 430 and *Boose*. "A defendant may not be tried in shackles in either a bench trial or a jury trial absent a showing that restraints are necessary." *People v. Reese*, 2017 IL 120011, ¶ 47. "The determination of whether and how to restrain a defendant is left to the discretion of the trial court, and a reviewing court examines whether the trial court has abused that discretion." *People v. Allen*, 222 Ill. 2d 340, 348 (2006). Once the court becomes aware that a defendant is restrained, it is required to conduct a *Boose* hearing to determine whether such restraints are necessary. *Reese*, 2017 IL 120011, ¶ 48.

4

The failure to conduct a hearing after the court becomes aware of restraints constitutes an abuse of discretion and due process violation. *Id.* ¶ 49.

¶ 14     Here, the parties agree that the court erred in leaving defendant's legs shackled without conducting the necessary *Boose* hearing. We agree. After the court was made aware of the restraint, it was required to either order the leg shackles removed or conduct a *Boose* hearing. Defendant's silence on the issue following his initial objection did not obviate the court's requirement to conduct a hearing.

¶ 15     Nonetheless, the State argues that remand is not necessary as the error was harmless beyond a reasonable doubt. See *People v. Shafer*, 2020 IL App (4th) 180343, ¶ 61. "[M]ost errors of constitutional dimension are subject to a harmless error analysis." *People v. Shaw*, 186 Ill. 2d 301, 344 (1998). In determining whether an error is harmless, the State bears the burden of establishing beyond a reasonable doubt that the error did not contribute to the verdict. *People v. Patterson*, 217 Ill. 2d 407, 428 (2005). Shackling errors may be subject to harmless error where the facts of the case mitigate the error's impact on "defendant's presumption of innocence, the ability to assist counsel, and the dignity of the court proceedings." *Reese*, 2017 IL 120011, ¶ 51. A shackling error will still require reversal if it " 'affect[s] the fairness of [the] trial and challeng[es] the integrity of the judicial process.' " *People v. Owens*, 2022 IL App (3d) 190151, ¶ 33 (quoting *Allen*, 222 Ill. 2d at 359).

¶ 16     Here, we do not believe the error contributed to defendant's conviction. Pamela testified defendant took her phone and then "stomped" on her ribs and chest. Orasco heard a struggle and Pamela calling his name. When Orasco went downstairs, he saw defendant walking up the stairs. Later, Pamela came to Orasco's door wheezing and complaining of chest pain. Bowman noted Pamela was short of breath. None of this evidence was impacted by the shackling error.

¶ 17    Moreover, we do not believe the shackling error deprived defendant his right to a fair trial. The record does not contain any indication the court was biased. In fact, the record demonstrates the court was not influenced by the shackling as it acquitted defendant of three of the four charges. The record also demonstrates defendant was able to defend himself without issue. He cross-examined all four of the State's witnesses, including attacking Hayes's credibility with Hayes's report and Orasco's testimony. Defendant also did not mention the shackles throughout the three-day trial. Finally, while the dignity of the proceedings is always a concern when a defendant is unnecessarily shackled, we do not believe the shackling here was of such a nature or magnitude to require reversal, particularly where defendant had a bench trial and the shackles were not being viewed by a jury. Compare *Reese*, 2017 IL 120011, ¶¶ 51-52 (shackling error was harmless where leg shackles were hidden by skirting, removed after jury selection, and the only prospective juror who saw the shackles stated it would not affect his ability to be fair), with *Boose*, 66 Ill. 2d at 264 (defendant was deprived of a fair trial where he "was brought to court wearing handcuffs, which were threaded through shackles attached to a restraining belt wrapped around his waist"). Therefore, we find that the court's failure to hold a *Boose* hearing was harmless error.

¶ 18    In coming to this conclusion, we reject defendant's contention that a finding of harmless error runs afoul of previous decisions of our court. See, *e.g.*, *People v. Martinez*, 347 Ill. App. 3d 1001, 1005 (2004) (finding that the court's failure to conduct a *Boose* hearing could not be harmless no matter how strong the evidence was). As noted above (*supra* ¶ 15), the Illinois Supreme Court has since held shackling errors may be subject to harmless error. *Reese*, 2017 IL 120011, ¶ 51. Other courts since *Reese* have repeatedly reviewed whether a shackling error was harmless instead of reversing *per se*. *Shafer*, 2020 IL App (4th) 180343, ¶ 60; *People v. Jones*,

2022 IL App (4th) 200638-U, ¶ 45; *People v. Whitmore*, 2022 IL App (1st) 211176-U, ¶ 18; *People v. Ryan*, 2023 IL App (2d) 220414, ¶ 29; *People v. Taber*, 2023 IL App (2d) 220288, ¶ 34.

¶ 19                                                III. CONCLUSION

¶ 20        The judgment of the circuit court of Will County is affirmed.

¶ 21        Affirmed.

¶ 22        PRESIDING JUSTICE McDADE, dissenting:

¶ 23        The majority finds the court's failure to conduct a hearing before deciding to leave defendant shackled while he represented himself at his bench trial to be "harmless" error. For the reasons that follow, I dissent from that finding.

¶ 24        At the outset, I emphasize some of the legal principles set out above by the majority:

> " 'A defendant may not be tried in shackles in either a bench trial or a jury trial absent a showing that restraints are necessary.' *People v. Reese*, 2017 IL 120011, ¶ 47. *** Once the court becomes aware that a defendant is restrained, it is required to conduct a *Boose* hearing to determine whether such restraints are necessary. *Reese*, 2017 IL 120011, ¶ 48. The failure to conduct a hearing after the court becomes aware of restraints constitutes an abuse of discretion and due process violation. *Id.* ¶ 49." *Supra* ¶ 13.

"A shackling error will still require reversal if it ' "affect[s] the fairness of [the] trial and challeng[es] the integrity of the judicial process." ' *People v. Owens*, 2022 IL App (3d) 190151, ¶ 33 (quoting *Allen*, 222 Ill. 2d at 359)." *Supra* ¶ 15.

¶ 25        The constitution guarantees "due process" to every person standing equal before the law. We do not need to define it; it suffices to say that our supreme court has developed rules and our legislature has enacted laws regarding the procedures necessary to provide every defendant a fair

7

and proper trial. These, as a practical matter, form the body of process that is due and owing. One of those rules is relevant to this case: Defendants are presumed innocent and no defendant should stand shackled before the court unless an actual determination has been made at a hearing, held expressly for the purpose, that he poses such a danger to persons in the courtroom or the decorum of the proceedings that he must be shackled throughout the trial. See Reese, 2017 IL 121011, ¶¶ 46-48. That did not happen here. There was no hearing. And, even though acknowledging the error, the trial court found its dereliction did not matter—*i.e.*, was harmless—because defendant would have been found guilty anyway on the strength of the evidence.

¶ 26        The majority agrees the error was harmless, finding that "the record does not contain any indication the court was biased." I disagree.

¶ 27        I believe we can all agree that if the defendant had been a member of our supreme court, the CEO of a Fortune 500 company, a millionaire, a high-level public officer, or any member of this appellate panel, there *would* have been a hearing and the court would have scrupulously accorded due process. Here, a decision was made, for whatever reason, that this defendant was not important enough, his voice was not powerful enough, his knowledge not formidable enough to require adherence to the rules that ensure due process. This defendant did not stand before the court equal to any of those who would unquestionably get a hearing. So, of course, there was bias shown in the record.

¶ 28        On largely the same evidence, we can easily say that the shackling error here "affected the fairness of defendant's trial and challenged the integrity of the judicial process."

¶ 29        The Supreme Court Rules are designed to ensure that the trial comports with defendant's constitutional right to due process. The violation of one or more of those rules constitutes a deprivation of due process. Defendant sitting shackled in the courtroom during his trial without

8

demonstrable cause violated his due process guarantees and deprived him of a fair trial *regardless* of whether the error was "harmless."

¶ 30 Finally, it is a bedrock principle of our judicial system that every person stands equal before the court. If the rights of a powerless, voiceless defendant are not applied with the same solicitude and care as those of the person with the biggest purse or the most far-reaching bully pulpit, our claims of equality are specious, our promises of equality before the law are hollow, and the integrity of our judicial process is severely compromised.

¶ 31 There is nothing harmless about this.